# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

EXCEL CONSTRUCTION GROUP,

    Plaintiff,

v.

GUIDEONE MUTUAL INSURANCE COMPANY.

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Excel Construction Group ("Excel" or "Plaintiff"), through its attorneys, Daly & Black, P.C. and Leventhal Sar LLC, respectfully submits the following Complaint and Jury Demand:

### PARTIES, JURISDICTION AND VENUE

1. Charis Ministries ("Charis") is a Colorado nonprofit corporation with a principal office street address of 10285 Federal Drive, Colorado Springs, Colorado 80908. Charis has an effective trade name in Colorado of "Charis Christian Center."

2. Charis is the owner of the subject property, a church facility located at 10285 Federal Drive, Colorado Springs, Colorado 80908 (the "Property").

3. At all relevant times, Charis is and was the beneficiary of a commercial property insurance policy covering the Property issued by GuideOne (the "Policy"). The Policy number is 00-1447-374.

4. Excel is Charis's contractor in connection with the property damage described in this Complaint.

1

5. Excel is a Texas corporation with a principal office street address of 5701 Watauga Road, Watauga, Texas 76148.

6. Excel operates a broad residential and commercial construction business throughout Texas, Colorado, and the Midwest.

7. Excel's principal place of business is Texas.

8. Excel is a citizen of the State of Texas.

9. Charis and Excel executed a document entitled: "Assignment of Benefits & Contact for Services." Such document is an assignment of rights from Charis to Excel (the "Assignment"). Pursuant to the Assignment, Charis assigned to Excel all of Charis's rights, benefits, and causes of action under the Policy, specifically including the right to pursue legal action in the event GuideOne fails or refuses to make timely, complete payment under the Policy. The Assignment specifically identifies Claim #AA135957, the claim at issue in this lawsuit (the "Claim").

10. GuideOne Mutual Insurance Company ("GuideOne" or "Defendant") is an Iowa corporation doing business in Colorado with a registered agent address of: C T Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

11. GuideOne is not a citizen of the State of Texas.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper in this Court because, among other things, the causes of action arise out of an insurance policy issued in Colorado and governed by Colorado law.

**GENERAL ALLEGATIONS**

14. Excel realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

15. The Policy provides coverage for direct physical loss or damage to the Property caused by or resulting from covered causes of loss, including damage resulting from windstorms and hail.

16. The Policy provides coverage for damage to the Property on a replacement cost basis, subject to a 90% coinsurance requirement.

17. During the Policy period from December 30, 2018, to December 30, 2019, the limit of such replacement cost coverage was $14,078,700 and the windstorm or hail deductible was 1% of such limit, or $140,787.

18. Pursuant to the loss payment and valuation provisions of the Policy, GuideOne is required to pay for the cost to repair or replace damage to the Property with other property of like kind and quality, up to the coverage limit, without deduction for depreciation.

19. Additionally, the Policy provides coverage for the increased cost of construction or loss of value resulting from the enforcement of ordinances or laws in the course of repairing or constructing the Property.

20. The Policy does not contain exclusions for "cosmetic" or similar non-"functional" damage.

21. On or about July 5, 2019, a severe storm struck the Colorado Springs, Colorado area.

22. The storm generated large hail. Meteorological data indicates that hail up to 1.25 inches fell at the Property for ten minutes.

23. During the course of the storm, the Property was severely damaged by hail and wind. The damage included, without limitation, damage to the Property's rubber EPDM roof, metal roof panels, roof metals, HVAC units, and other portions of the exterior, including extensive damage to the Property's many aluminum window frames.

24. On or about June 3, 2020, Charis entered into a Public Adjuster Contract with Insurance Adjusters Group, LLC ("IAG"), pursuant to which Charis retained IAG to advise and assist with the adjustment of the Claim on behalf of Charis.

25. Upon information and belief, IAG promptly notified GuideOne that it was representing Charis as a public adjuster in connection with the Claim.

26. On or about June 29, 2020, IAG filed a claim with GuideOne on behalf of Charis.

27. The claim was assigned claim number AA135957.

28. Shortly after the Claim was filed, GuideOne retained the engineering firm Knott Laboratory, LLC ("Knott") to investigate the claimed damage.

29. On or about July 29, 2020, Knott engineers Tim Phelan and Karl Mertens inspected the Property. Also were present were Mr. William Cox and Mr. Bill Watterud of IAG, representatives of Excel, and representatives of Charis.

30. On August 16, 2020, Mr. Pehlan emailed Mr. Cox and Mr. Watterud of IAG a list of ten questions about the Property, including requests for information about the history of water infiltration within the ceilings and various aspects of the Property's maintenance, repair, and remodeling history.

31. Prior to receiving responses to their questions, Mr. Phelan and Mr. Mertens prepared a Report of Findings for GuideOne dated August 18, 2020, two days later.

32. Mr. Phelan and Mr. Mertens concluded as follows:

- *Metal Panels*
    - *The metal panel roofs of the subject property exhibited indentations consistent with impacts from hail due to storms throughout the service life of the material inclusive of those reported in 2019 and 2020. However, the indentations due to hailstone impacts observed in the metal roofing system of the property did not functionally damage the roof and were cosmetic in nature only.*
    - *The vertical surfaces of the metal panels of the subject building were not dented by hail.*
    - *The metal panel roofing system of the subject residence was not damaged by wind.*

4

- *EPDM Membrane:*
  - *The EPDM membrane roofing system of the property was not damaged by hail.*
  - *The EPDM membrane roofing system of the property was not damaged as a result of wind.*
- *Windows and Doors*
  - *The windows and doors of the main building were not damaged by hail. However, the flashing below the west elevation windows of the southern connector and the detached, unconditioned structure north of the main structure exhibited widespread roughly circular indentations, while the horizontal surfaces of the window cladding of the detached structure exhibited isolated indentations, that were consistent with impacts from multiple hailstorms over the service life of the materials inclusive of those reported in 2019 and 2020.*
  - *The windows and doors at the property were not damaged by wind.*
  - *The window seal failures reported and observed at the subject property were not the result of a hailstorm or windstorm. Rather, such failures were the result of normal, age-related deterioration of the windows and not a one-time event.*
- *Water Infiltration:*
  - *The water infiltration reported and observed within the building was consistent with deficient drainage of the roofing system and deferred maintenance of the roof drains and sealant material at patches and seams resulting in the moisture stains on the suspended ceiling tiles, particularly during heavy precipitation or rapid snow melt events.*
  - *The moisture infiltration at the windows was consistent with missing glazing beads or deteriorated repairs along the glazing beads of the windows resulting from deferred maintenance, as well as deficiencies in the connections of the metal panels on the east elevation or deficiencies the underlying windows prior that were present prior to the installation of the metal panels.*

33. On August 20, 2020, Thomas Harrington, GuideOne's adjuster handling the Claim, emailed Charis: "The engineer is completing his report and should have that to us within 7 to 10 days. Once that is complete, our building consultant will complete his estimate for the covered damages. We will contact you and your public adjuster as soon as we review the reports and estimate."

34. On August 21, 2020, Mr. Watterud responded to Mr. Phelan's August 16, 2020 email, indicating that IAG was collecting information responsive to Mr. Phelan's questions.

35. GuideOne sent a "reservation of rights" letter to Charis dated August 25, 2020. According to GuideOne, the letter was "executed due to the late reporting of the damage which was reported to have occurred on July 5, 2019 and was reported to GuideOne Mutual Insurance on June

29, 2020." GuideOne's intent with the letter was to "permit an investigation of all matters relating to the said incident without incurring any admission of liability."

36. On September 16, 2020, Mr. Watterud provided information in response to Mr. Phelan's list of questions. Mr. Phelan confirmed receipt that day and indicated he would add the information to his file.

37. Neither GuideOne nor Knott provided Charis or IAG with a copy of Knott's August 18, 2020 Report of Findings until September 30, 2020, one day after Mr. Watterud requested an update on the report from Mr. Phelan.

38. GuideOne sent a letter to Charis dated October 1, 2020, in which GuideOne wrote: "Your claim remains open as our investigation is on-going. We need the following information to complete our investigation. We have received the engineer's report from Knott Laboratory and forwarded this to our building consultant for review. The building consultant will provide us with an estimate for the repair of the covered damages. GuideOne will contact you again via letter in 45 days if the investigation remains incomplete."

39. GuideOne sent a letter to Charis dated December 10, 2020 relating to the "settlement" of the Claim. Attached to the letter was a December 8, 2020 estimate of repair prepared by James D. Lynch with U.S. Building Consulting Group ("USBCG"), GuideOne's building consultant.

40. USBCG's estimate included a total of $53,959.41 in replacement cost value for the Property's main building, consisting of $49,380.67 to repair and replace the Property's roof system (including portions of the metal roof and 16 roof vents); and $4,578.74 to replace 255 linear feet of aluminum window cladding.

41. USBCG's estimate included a total of $32,403.85 in replacement cost value for the Property's other structures, including replacement of additional metal roof sections and window cladding.

42. As indicated in its December 10, 2020 letter, based on USBCG's estimate, GuideOne determined that (i) the covered damage to the Property's main dwelling was less than the $140,787 deductible and so no payment was owed; and (ii) the actual cash value of the repairs under the Policy's "Other Structures" coverage less the $500 deductible was $27,748.64.

43. Upon information and belief, based on the USBCG estimate, GuideOne issued a check in the amount of $27,748.64 to IAG.

44. The actual amount of damage caused by the July 5, 2019 storm was much greater than what was determined and estimated for by GuideOne. Without limitation, such damage includes damage to the Property's EPDM roof, far more extensive damage to the metal roof panels and roof metals, and far more extensive damage to the Property's windows.

45. Upon information and belief, the cost of repairing the hail damage to the Property is in the low-to-mid seven figures.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

46. Excel realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

47. A contract of insurance existed between GuideOne and Charis; namely, the Policy.

48. The Policy provides replacement cost coverage, which pays the cost of repair or replacement of covered damage, without a deduction for deprecation, subject to the Policy's limit of coverage.

49. The Policy requires GuideOne to pay replacement cost benefits for covered losses.

50. The Policy requires Charis to pay insurance premiums in exchange for replacement cost coverage, which Charis did.

51. Hail damage is a covered loss under the Policy.

52. The weather event and the damage caused by such weather event, both of which are described above, constitute a covered loss under the Policy.

53. GuideOne's estimate, which indicated the amount of replacement cost benefits GuideOne believed it owed, did not reflect the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses. GuideOne's estimate was unreasonable.

54. GuideOne's estimate unreasonably failed to provide sufficient funds to repair or replace the Property's hail-damaged roof system (including the EPDM roof, metal roof panels, and roof metals) and hail-damaged windows.

55. GuideOne's actual cash value payment to Charis was based on its inadequate and unreasonable estimate.

56. GuideOne did not pay what the Policy required, including because GuideOne determined, without a reasonable basis, that there was no hail damage to certain parts of the Property, when there was in fact hail damage caused during the Policy period and covered by the Policy, that required repair or replacement. For the areas that GuideOne acknowledged were damaged, its estimate failed to include a reasonable replacement cost amount that would allow reasonable repair or replacement, as necessary, related to such damage.

57. Such failures, among others, constitute a breach of contract.

58. As a result of GuideOne's actions and/or inactions equating to a breach of contract, Charis sustained damages in an amount to be proved at trial.

59. Breach of contract claims are assignable under Colorado law.

60. The Assignment validly assigned Charis's breach of contract claim to Excel.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. 10-3-1115 AND 1116)

61. Excel realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

62. At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

63. C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

64. GuideOne unreasonably delayed or denied payment of insurance benefits owed to Charis by:

  a. failing to include in its estimate the actual, necessary, and reasonable funds to repair and/or replace damaged portions of the Property caused by the weather event described above, including damage to the roof system (including the EPDM roof, metal roof panels, and roof metals) and windows;

  b. conducting an unreasonable, self-serving investigation, including by unreasonably relying on Knott's report, which used flawed methodology that failed to identify hail damage to various portions of the Property;

  c. conducting an unreasonable investigation that resulted in the unreasonable estimates described above; and

  d. engaging in additional acts and omissions that may be discovered in the course of litigation.

65. GuideOne unreasonably denied and delayed payment to Charis in violation of C.R.S. §10-3-1115.

66. GuideOne is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees.

9

67. Under C.R.S. §10-3-1115 and Colorado law interpreting this statue, "on behalf of any first-party claimant" includes claims brought an insured's contractor. Additionally, claims for violation of §10-3-1115/1116 are assignable under Colorado law, and the Assignment validly assigned Charis's statutory bad faith claims to Excel.

## PRAYERS FOR RELIEF

WHEREFORE, Excel prays for damages against GuideOne as follows:

a. Damages for breach of contract, including the value of benefits Charis was entitled to receive under the Policy that were not provided; damages for delayed payment; consequential damages; and reasonable interest on delayed payment;

b. Compensatory damages against GuideOne including economic and noneconomic damages;

c. Double damages, court costs, and reasonable attorney fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

d. An award of pre- and post-judgment interest;

e. Costs and expenses; and

f. Such other and further relief as this Court may deem just, equitable or proper.


**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted December 31, 2020.

          By:    <u>s/ *Richard D. Daly*         </u>
                Daly & Black, P.C.
                Richard D. Daly
                John Scott Black
                2211 Norfolk Street, Suite 800
                Houston, TX  77098
                Telephone: (713) 655-1405
                Facsimile:  (713) 655-1587
                Email:   rdaly@dalyblack.com
                        jblack@dalyblack.com

                And

                <u>s/ *Jonathan S. Sar*          </u>
                Sean B. Leventhal
                Jonathan S. Sar
                Leventhal Sar LLC
                3200 Cherry Creek S. Drive, Suite 520
                Denver, CO  80209
                Telephone: (720) 667-3030
                Facsimile:  (888) 446-8602
                Email:  sleventhal@leventhalsarlaw.com
                        jsar@leventhalsarlaw.com

                *Attorneys for Plaintiff*